## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In the Matter of:                          }
                                           }
GEORGE SANDERS, III                        }      CASE NO. 06-80071-JAC-13
SSN:    XXX-XX-0062                        }
TIFFANY SANDERS                            }
SSN:    XXX-XX-9471,                       }      CHAPTER  13
                          Debtor(s).       }

## MEMORANDUM OPINION

On April 3, 2006, this case came before the Court on objection to confirmation of debtors' Chapter 13 plan filed by the Alabama Department of Human Resources ("DHR").  At issue is whether under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub.L. No. 109-8)("BAPCPA"), the debtors' Chapter 13 plan must provide for payment in full of DHR's § 507(a)(1) claims for pre-petition past due child support before any disbursement can be made on a § 507(a)(2) administrative expense claim for attorney fees.  A second issue is whether the debtors' plan must limit distributions to secured creditors during the time DHR's § 507(a)(1) priority claims are being paid.

### Findings of Fact

On January 16, 2006, the debtors filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code.  The debtors' plan, filed on January 31, 2006, proposed to pay § 507 claims "in full deferred case (sic) payments," and attorney fees "upon confirmation."  The plan provided for one secured claim, a home mortgage arrearage claim owed to HomeEq Servicing Corporation in the amount of $3,600.00, to be paid by the trustee with a proposed fixed payment of $71.51 per month.

On March 28, 2006, DHR filed two priority claims in the amounts of  $102.18 and $2,569.90 for child support arrearage owed by the debtor, George Sanders, and this objection to confirmation of the debtors'

proposed plan. On April 3, 2006, the Court held a hearing on the objection to confirmation. The Court overruled DHR's objection to the extent DHR sought to have domestic support obligations paid first over all other § 507(a) priority claims and to the extent DHR sought to limit distributions to secured creditors to provide only for "post-confirmation adequate protection payments" during the time DHR's claims are being paid.[1] On the same date as the confirmation hearing, the trustee submitted an order confirming the debtors' plan in conformity with the Court's ruling. The confirmation order, dated April 3, 2006, provides for payments by the trustee from money received to first pay "507(a)(2) costs, including 503(b) claims of filing fees of $189.00 and then attorneys fees of $1003.00." The confirmation order includes the following special provisions:

- HOME EQUITY SERVICE SHALL BE PAID MONTHLY INSTALLMENTS OF $87.00 FOR 47 MONTHS OR UNTIL SAID CLAIM IS PAID IN FULL.

- ALABAMA CHILD SUPPORT PAYMENT SHALL BE PAID IN MONTHLY INSTALLMENTS OF $54.00 FOR 47 MONTHS OR UNTIL SAID CLAIM IS PAID IN FULL.

- ALABAMA CHILD SUPPORT PAYMENT SHALL BE PAID IN MONTHLY INSTALLMENTS OF $4.00 FOR 25 MONTHS OR UNTIL SAID CLAIM IS PAID IN FULL.

- CLAIMS DISTRIBUTION WILL BE SUBJECT TO MODIFICATION AFTER BAR DATE REVIEW.

The confirmation order requires the debtors to pay $156.00 per month for 58 months. The plan is a base plan pursuant to which unsecured creditor's will receive a distribution of approximately 5%.

## Argument

---

[1]      DHR further objected to the payment of its arrearage claim outside the plan on the grounds that it would take approximately 10 years to pay the arrearage in full through the payroll deduction in place on the petition date. The plan provided in paragraph IV. Special Provisions, to pay child support arrears direct outside the plan by payroll deduction pursuant to a prepetition garnishment order. The Court sustained DHR's objection pursuant to 11 U.S.C. § 1322(a)(2) which provides that priority claims must be paid in full, in deferred cash payments, unless the holder of a claim agrees to a different treatment of such claim. DHR does not consent to the treatment of its claim in this manner. The parties agreed at the hearing that DHR would release the prepetition garnishment for DHR's arrearage claim to be paid for in full through debtors' plan.

DHR objects to the payment of attorney fees under § 507(a)(2) as an administrative expense before disbursements are made on DHR's § 507(a)(1) priority child support claims. DHR asserts that the debtors' plan violates the priority scheme in 11 U.S.C. § 507(a) as amended under the BAPCPA. With respect to the secured claim on the debtors' home mortgage arrearage, DHR argues that secured creditors should only receive sufficient post-confirmation adequate protection payments while domestic support obligations are being paid. DHR argues that once the § 507(a)(1) claims are paid in full, payments to the secured creditor could be increased to an amount sufficient to pay the secured claim in full.

## Conclusions of Law

DHR's domestic support claims are unsecured claims entitled to priority status under § 507(a)(1). BAPCPA amended the priority scheme under § 507(a) and moved unsecured claims for pre-petition domestic support obligations owed to a spouse, a former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, to a first priority position under newly added § 507(a)(1)(A). Newly added § 507(a)(1)(B) gives first priority to pre-petition support obligations owed to a government unit, subject to claims under § 507(a)(1)(A). Prior to the BAPCPA amendments, claims for alimony, maintenance or support were entitled to seventh priority under § 507(a)(7). Now, domestic support obligations of the debtor are entitled to first priority, subject to a carve out for the expenses of a trustee in administering assets that might otherwise be used to pay the support obligations.[2]

DHR contends that domestic support claims must now be paid first through a Chapter 13 plan pursuant to § 507(a)(1). Pursuant to § 1322(a)(2), the debtors' plan must provide for full payment of DHR's priority claim, in deferred cash payments. Prior to the BAPCPA amendments, courts consistently held that nothing in § 1322 required a Chapter 13 plan to provide for payment in full of higher priority claims before

---

[2]    11 U.S.C. § 507(a)(1)(C).

distributions were made to lower priority claims.[3]  The only exception to this requirement was that the holder of a priority claim could consent to different treatment.   Congress did not amend § 1322 to require the payment of higher priority claims as listed in § 507(a) before paying lower priority claims.  Newly added § 1322(a)(4), does provide an exception to the full payment requirement for claims entitled to priority under § 507(a)(1)(B), domestic support obligations owed or assigned to a government unit, but this exception is not applicable in this case.  To accomplish confirmation over the objection of a priority creditor, § 1322(a)(2) continues to require the Chapter 13 plan to provide for full payment, in deferred cash payments, of priority claims under § 507, but nothing in § 1322 requires higher priority claims to be paid in full before lower priority claims.

Section 507(a) sets forth the priority payment provisions for administrative expenses and unsecured claims.  Pursuant to 11 U.S.C.§ 103(a),  § 507 applies in cases filed under Chapters 7, 11, 12, and 13, but not in the manner asserted by DHR.  The specific means by which § 507 is implemented varies in each Chapter. In Chapter 11 cases, administrative expenses under § 507(a)(2)  must be paid in full on the effective date of the plan, but domestic support claims may be paid over time after administrative expenses.   Section 1129(a)(9) provides that administrative expenses under § 507(a)(2) and certain unsecured claims arising in an involuntary case entitled to priority under § 507(a)(3) must be paid in full on the effective date of the plan. Priority claims under § 507(a)(1), § 507(a)(4), § 507(5), § 507(a)(6), and § 507(a)(7) vote as a class in Chapter 11 cases.[4]  If  the class votes to accept full payment in deferred cash payments, the vote is binding on dissenting claimants.

In Chapter 7 cases, the trustee is charged with the duty under § 704(a)(1) to collect and reduce property of the estate to money for distribution to creditors.  The trustee will collect and sell property securing a claim if the value of the collateral exceeds the total amount owed to creditors holding liens against the

---

[3]    *In re Aldridge*, 335 B.R. 889 (Bankr. N.D. Ala.  2005); *In re Ferguson*, 134 B.R. 689 (S.D. Fla. 1991).

[4]    11 U.S.C. § 1129(a)(9)(B).

property, pay the secured claims in full, and distribute the balance to unsecured creditors in conformity with the distribution scheme set out in § 726 of the Code. Pursuant to § 726(a)(1), priority claims are entitled to be paid first from property of the estate "in the order specified in section 507 . . . ."[5]

There is not a similar provision in Chapter 13 requiring priority creditors to be paid "in the order specified in section 507." In Chapter 13 cases, §1326 supplements the priorities provisions in § 507 requiring only that the trustee pay § 507(a)(2) administrative expenses before or contemporaneously with payments to other claimholders under the plan. Prior to the BAPCPA amendments, § 1326(b)(1) provided:

(b) Before or at the time of each payment to creditors under the plan, there shall be paid –

(1) any unpaid claims of the kind specified in section 507(a)(1) of this title; and

(2) if a standing trustee . . . is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28.

Section 1326(b)(1) gave the debtor the choice of paying § 507(a)(1) administrative expenses before or concurrently with other claims, so long as the administrative payments began no later than the first payment to other creditors.[6] Administrative expenses are now entitled to priority under § 507(a)(2). Congress amended § 1326(b)(1) by replacing the reference to § 507(a)(1) with § 507(a)(2) so that any unpaid administrative expenses must continue to be paid in Chapter 13 cases "[b]efore or at the time of each payment to creditors under the plan" as required prior to the BAPCPA amendments. By striking the reference to § 507(a)(1) in § 1326(b)(1) and adding § 507(a)(2), Congress clearly intended to require the continued payment of administrative expenses before or contemporaneously with payments to other claimholders, even § 507(a)(1) claimholders. Had Congress intended to afford this special payment treatment to § 507(a)(1) support obligations, it could have expressly done so. Congress provided domestic support obligations other special protections under the BAPCPA amendments: (1) post-petition support obligations must now be paid

---

[5]    11 U.S.C. § 726(a)(1).

[6]    *In re Aldridge*, 335 B.R. 889 (Bankr. S.D. Ala. 2005); *In re Cason*, 190 B.R. 917 (Bankr. N.D. Ala. 1995).

in full prior to confirmation pursuant to § 1325(a)(8); and (2) Chapter 13 debtors may not obtain a discharge until they certify that all domestic support obligations have been paid pursuant to § 1328(a). Congress did not, however, see fit to also require § 507(a)(1) claims be paid before or at the time of each payment to creditors under the plan.

Section 507(a)(2) grants priority to administrative expenses allowed under § 503(b) and fees and charges assessed under chapter 123 of title 28. Section 503(b)(2) provides that there shall be allowed administrative expenses including "compensation and reimbursement awarded under section 330(a) of this title[.]"[7] Section 330(a)(4)(B) specifically provides that the Court may award reasonable compensation in a Chapter 13 case "to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." Accordingly, § 507(a)(2) administrative expenses include attorneys' fees to debtors' counsel. These fees must be paid either before or contemporaneously with other claimholders under § 1326(b)(1) as amended. Accordingly, the Court finds that the debtors' Chapter 13 plan does not violate § 507(a), as amended, by providing first for the payment of administrative expenses, including attorney fees, as required by § 1326(b)(1).

The Court further finds that the debtors' plan does not violate § 507(a) by providing for the payment of secured claims concurrently with DHR's first priority claim. Section 1322(b)(4) provides that the Chapter 13 plan *may* –

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim[.]

Section 1322(b)(4) provides Chapter 13 debtors with much flexibility in designing a payment scheme for paying unsecured priority claims concurrently with secured claims and other general unsecured claims. The debtors' plan complies with § 1322(b)(4).

---

[7] 11 U.S.C. § 503(b)(2).

DHR argues that distributions to secured creditors should be limited to an amount that is sufficient to provide secured creditors only with post-confirmation adequate protection payments until first priority support obligations are paid in full. It is important to remember, however, that DHR is an unsecured creditor. Unsecured creditors are only entitled to the assets remaining after secured creditors have taken either the value of their collateral or the collateral itself. As one court recently explained:

> In a sense, secured claims may be said to have 'priority' over all unsecured claims . . . [Because a] secured claim represents the holder's rights in specific property . . . [t]he holder of an allowed secured claim has not just a general claim but property which it is entitled to receive. In that sense, secured claims are first priority claims in bankruptcy cases.[8]

There is simply nothing in the Code that supports DHR's argument that secured creditors should receive reduced post-confirmation adequate protection payments while DHR's first priority claims are being paid in full. Section 1322(b)(4) specifically allows secured claims to be paid concurrently with unsecured priority claims as proposed by the debtors' Chapter 13 plan. Moreover, DHR's arguments appears to violate newly added § 1325(a)(5)(B)(iii) which provides with respect to secured claims that if "property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts[.]" Under DHR's proposed distribution scheme, the secured creditor in this case would not receive periodic payments in equal monthly amounts.

A separate order will be entered consistent with this opinion.

Dated: April 18, 2006

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc:   Debtor(s)
      G. John Dezenberg, Jr., attorney for debtor(s)

---

[8] *In re Perez*, 2006 WL 760341 (S.D. Tx. 2006)(quoting *In re Parker*, 15 B.R. 980, 983 (Bankr. E.D. Tenn. 1981)).

Cynthia Slate-Cook, attorney for creditor
Philip Geddes, trustee