IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

IN RE:

GEORGE WILLIAM SANDERS
TIFFANY SANDERS,

    DEBTORS,                                    CASE NO.: CV-06-J-953-NE

                                                          BANKRUPTCY COURT CASE
                                                          NO.:06-80071

---

THE STATE OF ALABAMA
DEPARTMENT OF HUMAN RESOURCES,

    APPELLANT,

v.
GEORGE WILLIAM SANDERS
TIFFANY SANDERS
PHILIP GEDDES, CHAPTER 13 TRUSTEE,

    APPELLEES.

## MEMORANDUM OPINION

This matter is before the court as an appeal from the Bankruptcy Court, pursuant to 28 U.S.C. § 158(a). The parties have filed appellate briefs, which the court has reviewed. The court specifically finds that oral argument would only delay entry of a ruling on appeal. This court finds, in accordance in Fed.R.Bankr.P. 8012,

that the facts and legal arguments are adequately presented in the briefs and record and the decisional process will not be significantly aided by oral argument.

**Factual Background**

The facts of this appeal are not in dispute. The debtors, George William Sanders and wife Danielle Sanders, field a joint Chapter 13 bankruptcy petition on January 16, 2006. Appellant, the Alabama Department of Human Resources (DHR), filed two proofs of claim. One proof of claim concerned $102.18 for Tiffany D. Holden, who is the same person as debtor Tiffany Danielle Sanders. The other proof of claim was for $2,569.90 for child support arrears owed to Laquita D. Tipler. This arrearage was being paid through payroll deduction from debtor George Sanders at the time the bankruptcy petition was filed and the Debtors' Chapter 13 Plan proposed that this arrangement be continued. DHR objected to confirmation of the Plan, stating that the amount in arrears should be paid through the Debtors' Plan and not through continued payroll deduction. Furthermore, DHR argued that it should be paid ahead of all other creditors, including attorney fees to Debtors' counsel. After conducting a hearing on DHR's arguments, the Bankruptcy Court entered an Order on April 18, 2006, which included the arrears within the Chapter 13 Plan, but overruled DHR's Objection to Confirmation concerning DHR's argument that the "order of priorities"

2

in 11 U.S.C. § 507 should apply in this plan under Chapter 13. DHR appealed to this court from this Order.

The sole dispute before the court is whether, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), the Chapter 13 Plan must provide for payment in full of domestic support obligations pursuant to 11 U.S.C. § 507(a)(1) before disbursements are made on other § 507(a) claims, including attorney's fees.

## Standard of Review

This court functions as an appellate court for the decisions of the United States Bankruptcy Courts. *In re Sublett,* 895 F.2d 1381, 1383 (11th Cir.1990). This Court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard of review and conclusions of law under the de novo standard of review. *Whiting-Turner Contracting Co. v. Electric Machinery Enterprises, Inc.*, 2006 WL 1679357, *1 (M.D.Fla.2006). De novo review requires the court to make a judgment "independent of the bankruptcy court's, without deference to that court's analysis and conclusions." *In re Sternberg*, 229 B.R. 238, 244 (S.D.Fla.1998); citing *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir.1984). The proper construction of the Bankruptcy Code by the bankruptcy court or by the district court is a matter of law; accordingly, such interpretations are subject to de novo review. *In re Colortex*

3

*Industries, Inc.*, 19 F.3d 1371, 1374 (11ᵗʰ Cir.1994); *In re Taylor*, 3 F.3d 1512, 1514 (11ᵗʰ Cir.1993).

## Legal Analysis

As stated above, the sole issue before this court is whether the Plan, as confirmed, must conform to the priority requirements set forth in 11 U.S.C. § 507(a). If the priorities have been properly applied in the Plan as it stands, this court must affirm the determination of the Bankruptcy Court to confirm the Plan. The parties agree that the following provisions of the Bankruptcy Code, as amended by BAPCPA, are relevant. Section 507(a) states in part:

> a) The following expenses and claims have priority in the following order:
>
> (1) First:
> (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.
> (B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible

4

relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

(C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

(2) Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a). Section 1322 sets forth requirements for what a Chapter 13 Plan shall contain and what it may contain. That section states in relevant part:

(a) The plan shall--

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;
(3) if the plan classifies claims, provide the same treatment for each claim within a particular class; and.
(4) notwithstanding any other provision of this section, a plan may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

5

> (b) Subject to subsections (a) and (c) of this section, the plan may ...
>
> (4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

11 U.S.C.A. § 1322. Section 1326 concerns the order of payments in a Chapter 13 Plan. That section contains language that:

> (b) Before or at the time of each payment to creditors under the plan, there shall be paid--
> (1) any unpaid claim of the kind specified in section 507(a)(2) of this title;

11 U.S.C.A. § 1326 (b).

DHR asserts that through combination of these provisions, it is entitled to payment in full prior to any other distribution under § 507(a). Section 507(a)(1)(C) states that if a trustee is appointed under any of a variety of sections, including 1302, the administrative expenses of the trustee shall be paid before domestic support claims. DHR asserts that Congress did not include payment for attorney fees in § 507(a)(1)(C), but instead gave them a priority immediately behind domestic support obligations. It argues that any interpretation beyond specific application of § 507 priorities in the order set forth by statute renders its first place priority meaningless in the context of petitions under Chapter 13.

6

For support, DHR points out that under § 1325(a)(8) a court cannot confirm a Chapter 13 Plan if the debtor has not paid all amounts required to be paid under a domestic support obligation. Similarly, under § 1307(c)(11), a court may convert a case "under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including ... failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." From these provisions, DHR concludes that Congress intended to domestic support obligations are to be paid first.

The trustee and the debtors respond that specific order of § 507 priorities do not apply in a Chapter 13 Plan. As cited above, § 1326 concerns payments under a Chapter 13 Plan. The only mention of § 507 is in § 1326 (b) (1), which mandates that "at the time of each payment to creditors under the plan, there shall be paid ... any unpaid claim of the kind specified in section 507(a)(2) of this title..." Section 507(a)(2) concerns "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28."[1] 11 U.S.C. § 507(a)(2).

---

[1] Section 503 provides for payment of attorney fees approved under § 330(a)(1)(A).

7

The Bankruptcy Court disagreed with DHR's reasoning, and found that DHR does not have the same priority under § 507(a) in a case under Chapter 13 case as it does in a case under Chapter 7. That court found, and the debtors and trustee argue here, that § 726(a) of the Bankruptcy Code, which requires that property of the estate in a Chapter 7 case be distributed in the order specified in § 507, does not have a parallel provision for Chapter 13 cases.[2] Rather, § 1326 specifically applies to Chapter 13 plans, and specifically requires administrative costs to be paid "at the time of each payment to creditors under the plan." § 1326 (b)(1).

The Memorandum Opinion entered by the Bankruptcy Court held as follows:

> Congress amended § 1326(b)(1) by replacing the reference to § 507(a)(1) with § 507(a)(2) so that any unpaid administrative expenses must continue to be paid in Chapter 13 cases "[b]efore or at the time of each payment to creditors under the plan" as required prior to the BAPCPA amendments. By striking the reference to § 507(a)(1) in § 1326(b)(1) and adding § 507(a)(2), Congress clearly intended to require the continued payment of administrative expenses before or contemporaneously with payments to other claimholders, even § 507(a)(1) claimholders. Had Congress intended to afford this special payment treatment to § 507(a)(1) support obligations, it could have expressly done so. Congress provided domestic support obligations other special protections under the BAPCPA amendments: (1) post-petition support obligations must now be paid in full prior to

---

[2]Indeed, should this court adopt the logic of DHR, § 726 would be rendered meaningless, as there would by no need to state that in cases filed under Chapter 7 [as opposed to Chapter13] that "... property of the estate shall be distributed– (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title ...." 11 U.S.C.A. § 726(a)(1).

8

confirmation pursuant to § 1325(a)(8); and (2) Chapter 13 debtors may not obtain a discharge until they certify that all domestic support obligations have been paid pursuant to § 1328(a). Congress did not, however, see fit to also require § 507(a)(1) claims be paid before or at the time of each payment to creditors under the plan.

*In re Sanders,* 341 B.R. 47, 51 (Bkrtcy.N.D.Ala.2006). In a strikingly similar case, the Bankruptcy Court for the Middle District of Alabama reached the same conclusion. In that case, "DHR contend[ed] that its claims should be paid in full, before any other claim is paid, including the claim of the Debtor's attorney for his fees." *In re Vinnie,* __ B.R. __, 2006 WL 1731150 (Bkrtcy.M.D.Ala.2006). That Court considered the § 507 rules of priority and the Chapter 13 rules of distribution. It concluded that a plain reading of § 1322(a)(2) treated all of the subsections of § 507 alike. *Id.*, at 2. It also concluded that under the plain language of § 1322(a), concurrent, rather than sequential payment of claims listed in § 507 was envisioned by Congress. *Id.* That Court further found that § 1326(b)(1) actually bars the relief sought by DHR, as this section requires that the debtor's attorney be paid contemporaneously with other creditors.[3] *Id.*, at 3.

The court finds that had Congress intended domestic support obligations to be paid before all other § 507 claims in a Chapter 13 Plan, it would not have included

---

[3] That Court found a reasonable argument could be made that § 1326(b)(1) actually allows an attorney to be paid before DHR, notwithstanding the fact that it would have a higher priority in a case under Chapter 7. *In re Vinnie,* 2006 WL 1731150, at 3.

9

the language found in § 1326(b)(1). As such, the Court is of the opinion that DHR's position is untenable.

DHR also argues that the Chapter 13 plan in question should limit distribution to secured creditors until the domestic support obligation is paid in full. The court finds this argument wholly without merit. Section 1322(b)(4) states that a plan "may ... provide for payments on any unsecured claim to be made concurrently with payments on any secured claim..." DHR's argument otherwise is based on an assertion that because secured claims are secured by collateral, those creditors are not harmed by waiting for their money. Even more creatively, DHR argues that "[i]f secured creditors are allowed 'first payment' against the best interest of a domestic support obligation, secured creditors will have no incentive to be more selective in determining to whom they sell and finance property." Brief of appellant, at 18. Perhaps DHR should lobby Congress for creditors to have incentives to not sell property to people with children (as they are most likely to have domestic support obligations), but that is not within the province of this court.

## CONCLUSION

Having considered the arguments of the parties, the court finds that the interpretation of BAPCPA set forth by DHR is unsupportable by the plain language of the Bankruptcy Act. In consideration of the foregoing, the court **ORDERS** that the Order of the Bankruptcy Court will be **AFFIRMED** by separate Order.

**DONE** and **ORDERED** this the 17th day of July, 2006.

*/s/ Inge Prytz Johnson*

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE